# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

SEARS HOME APPLIANCES SHOWROOMS, LLC and SEARS AUTHORIZED HOMETOWN STORES, LLC, ) ) ) ) )

    Plaintiffs/Counter-Defendants, ) )

    v. ) )

APPLIANCE ALLIANCE, LLC, BRENT TURLEY, and MINENA TURLEY, ) ) )    15-cv-4414

    Defendants/Counter-Plaintiffs, ) )    Judge John Z. Lee

    v. ) )

SAMANTHA WILKS, SEARS HOLDING CORPORATION d/b/a SEARS HOMETOWN & OUTLET and SEARS.COM, SEARS, ROEBUCK & CO., JEFFREY SCOTT TUCKER, and 2720 SH 121, LP, ) ) ) ) ) ) )

    Third-Party Defendants. )

## MEMORANDUM OPINION AND ORDER

Sears Home Appliances Showrooms, LLC ("SHAS") and Sears Authorized Hometown Stores, LLC ("SAHS") (together, "Plaintiffs") filed this lawsuit against Brent and Minena Turley ("the Turleys") and Appliance Alliance, LLC for breaching the parties' franchise agreements. In turn, the Turleys and Appliance Alliance ("Counter-Plaintiffs") brought counterclaims against SHAS and SAHS, as well as third-party defendants Sears Holding Corporation d/b/a Sears Hometown & Outlet

and Sears.com ("Sears Holding"), Sears, Roebuck & Co. ("Sears Roebuck"), Samantha Wilks ("Wilks"), Jeffrey Scott Tucker ("Tucker"), and 2720 SH 121, LP.

In their First Amended Counterclaim ("FAC"), Counter-Plaintiffs allege breach of contract (Count I), conversion and trespass (Count II), tortious interference with contract and existing and prospective business relations (Count III), defamation, business disparagement, and unfair competition (Count IV), breach of fiduciary duty, economic duress and business coercion, oppressive conduct, and constructive trust (Count V), violations of the Texas Business Opportunity Act and Texas Deceptive Trade Practices Act (Count VI), and fraud (Count VII).

SHAS, SAHS, Sears Holding, Sears Roebuck, Wilks, and Tucker ("Sears Counter-Defendants") have moved to dismiss certain counts in the FAC. For the following reasons, the Sears Counter-Defendants' motion to dismiss [57] is granted in part and denied in part.

## Background

The events giving rise to this dispute began prior to 2010, when the Turleys—recently retired from careers at the National Aeronautics and Space Administration—began exploring investment opportunities. FAC ¶ 10, ECF No. 44. As part of their research, the Turleys reviewed a Sears "Franchise Disclosure Document" that SHAS was circulating. *Id.* ¶ 11. Based on "representations and assurances" included in the Franchise Disclosure Document and made by Sears,[1] the Turleys elected to purchase four Sears franchises in Texas. *Id.* ¶¶ 12–13. The

---

[1]    The allegations in the FAC often refer to "Sears" without specifying any particular Sears Counter-Defendant. The significance of this reference is discussed later.

Turleys executed the purchase in February 2010 through Appliance Alliance, LLC, which they own and control. *Id.* ¶ 12.

The Turleys' investment was initially successful. From 2010 through the beginning of 2012, their franchises were profitable. *Id.* ¶ 16. Based on their success, their course of dealing with Sears, and their understanding of the franchise relationship based on Sears's representations and franchise documents, the Turleys invested in two additional franchises. *Id.* ¶¶ 16–17. Shortly after acquiring the two additional franchises, however, the Turleys' relationship with Sears began to deteriorate. *Id.*

According to the Turleys, SHAS "split away" from Sears Holding, resulting in "inherent competition[] whereby Sears Holding enjoyed an unfair competitive edge." *Id.* ¶ 18. A number of problems then arose relating to their franchise relationship. *See id.* ¶ 19 (listing changes). These problems included the following. First, the Turleys allege that, in purchasing their franchises, Sears represented that it would impose territorial restrictions to prevent direct competition with their franchises and thereby protect the Turleys' investment. *Id.* ¶ 13. "[T]he franchise offering documents" failed to disclose, however, that the Turleys' franchises "would be subjected to price, product, financing, and ancillary services competition, directly from Sears, operating through one or more of its controlled entities or outlets." *Id.* Additionally, Sears's "offering circulars" represented that the Turleys would receive a certain minimum average commission as a percentage of merchandise sales, and in finalizing the franchise sales, Sears "encouraged its incoming franchisees to

believe" they would receive even larger commissions.  *Id.* ¶ 14.  But shortly after the Turleys purchased their fifth and sixth franchises, Sears began reducing commissions below what they were promised.  *Id.* ¶ 19.  Similarly, despite promising to pay the Turleys a 2% "marketing fee," Sears refused to do so.  *Id.* Finally, the Turleys were under the impression that they would have considerable freedom in dictating the operation of their franchises, but Sears instead exercised "total domination and control," fixing prices, hours, and inventory, among other things.  *Id.* ¶ 73.  In addition to these problems, Sears took a number of other actions that "operated together to make the continued profitable operations of [the Turleys'] business impossible to maintain."  *Id.* ¶ 19.

After taking these actions, Sears allegedly "began manufacturing purported breaches and noncompliance with its required operations procedures."  *Id.* ¶ 20. Sears then used these breaches and acts of noncompliance as grounds for threatening to hold the Turleys in default of their franchise agreements.  *Id.*  As part of this course of conduct, Sears assigned one of its employees, Wilks, to oversee the Turleys' stores.  *Id.* ¶ 22.  According to the Turleys, Wilks "was focused upon circumventing [the Turleys'] relationship with their employees[] and taking over the operations of the stores by usurping [the Turleys'] authority over their own employees."  *Id.*

Ultimately, in April 2015, Sears declared the Turleys in default of their franchise agreements and ordered them to turn over the keys to their stores.  *Id.* ¶ 25.  Tucker, a district sales manager for Sears, took the keys to one of their stores

and instructed the landlord to change the locks. *Id.* ¶ 26. Wilks called employees at the Turleys' other stores and told them to open the stores only "under her direction." *Id.* ¶ 28. According to the Turleys, Sears took control of all inventory at their stores and locked them out. *Id.* ¶ 29. Plaintiffs' action before this Court, and Counter-Plaintiffs' counterclaims in response, soon followed.

## **Legal Standard**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint or counterclaim must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Cozzi Iron & Metal, Inc. v. U.S. Office Equipment, Inc.*, 250 F.3d 570, 574 (7th Cir. 2001) (applying the same standard in reviewing a motion to dismiss a counterclaim as with a motion to dismiss a complaint). "A claim has facial plausibility when the [counter-plaintiff] pleads factual content that allows the court to draw the reasonable inference that the [counter-defendant] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the [counter-claimant]." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) (citing *Luevano v. Wal–Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013)). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S.

at 678).  As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

<u>Analysis</u>

The number of parties and claims involved in the case invites confusion.  In the interests of clarity, the Court will proceed as follows.  First, the Court will address the Sears Counter-Defendants' motion to dismiss Counts I, II, III, and IV of the FAC as against Sears Holding and Sears Roebuck.  Second, the Court will address the Sears Counter-Defendants' motion to dismiss Counts I, VI, and VII as against Wilks.  And finally, the Court will address the remaining grounds on which the Sears Counter-Defendants seek to dismiss Counts I, III, IV, V, VI, and VII.

One preliminary piece of housekeeping:  The Sears Counter-Defendants have also moved to dismiss all claims against Tucker.  In their response, Counter-Plaintiffs state that "Jeffrey Tucker is not a Counter-Defendant identified as a party in the Counterclaim, so any motion to dismiss him should be denied as moot." Counter-Pls.' Resp. 8 n.3, ECF No. 64.  The Sears Counter-Defendants interpreted this as an acknowledgement that Counter-Plaintiffs do not wish to pursue any claims against Tucker and requested that all claims against him be dismissed with prejudice.  Counter-Defs.' Reply 5 n.3, ECF No. 69.  The Court agrees and dismisses all claims against Tucker with prejudice.

## I.    Counts I, II, III, and IV as Against Sears Holding and Sears Roebuck

The Sears Counter-Defendants move to dismiss Counts I, II, III, and IV as against Sears Holding and Sears Roebuck.  In regard to Count I, they argue that

Sears Holding and Sears Roebuck were not parties to the franchise agreements underlying Counter-Plaintiffs' breach of contract claim and thus cannot be liable for breach of contract. Counter-Defs.' Mot. Dismiss 3, ECF No. 57. In regard to Counts II, III, and IV, they argue that Sears Holding and Sears Roebuck likewise cannot be liable, on the ground that they are separate corporate entities from SHAS and SHOS, and Counter-Plaintiffs do not allege Sears Holding and Sears Roebuck were involved in the actions alleged under those counts. *Id.* at 4.

As a starting point, Counter-Plaintiffs acknowledge that SHAS, SHOS, Sears Holding, and Sears Roebuck are separate corporate entities. In the FAC, Counter-Plaintiffs identify SHAS, Sears Holding, and Sears Roebuck as distinct entities, FAC ¶¶ 4, 6–7. Additionally, Counter-Plaintiffs do not allege at any point in the FAC that they dealt or communicated with any corporate entity other than SHAS.[2] Rather, Counter-Plaintiffs allege merely that SHAS, "[o]n information and belief . . . is owned and/or controlled ultimately by" Sears Roebuck, and "[t]herefore, any judgment solely against this Counter-Defendant would be useless without joint and several liability of" Sears Roebuck. FAC ¶ 4. They further claim that Sears Roebuck

---

[2]     In their response, Counter-Plaintiffs claim that "[a]t the outset of [the] franchise relationship, Counter-Plaintiffs contracted with Sears Roebuck." Resp. at 5. This assertion, however, is belied by the FAC, in which they allege that the Turleys obtained an initial Franchise Disclosure Document from SHAS and decided to invest in Sears franchises on that basis. FAC ¶ 11. Counter-Plaintiffs cannot amend the FAC through their response. *Wausau Underwriters Ins. Co. v. Pronto Staffing Servs., Inc.*, No. 11 C 928, 2011 WL 6016284, at *2 (N.D. Ill. Dec. 2, 2011). Additionally, in the franchise agreements that SHAS attached to its Complaint—which the Court can consider because they are referenced in the FAC, *Makoul v. Prudential Ins. Co. of Am.*, No. 12 C 1240, 2013 WL 3874045, at *1 n.1 (N.D. Ill. July 25, 2013)—SHAS, and not Sears Roebuck, is the contracting party. Compl., Exs. A1–A3, ECF No. 1.

has created a network of affiliated corporate entities which it ultimately owns and controls, and operates the same as a single enterprise for its own benefit and profit. Although assets and business relationships may have been transferred or assigned from one Sears entity to another, ultimately [Sears Roebuck], on information and belief, directs and controls all of them and causes them to act for its own overall good and benefit.

*Id.* ¶ 7. The FAC therefore uses "Sears" to refer to what it alleges is a collective entity. *Id.*

While Counter-Plaintiffs do not expressly invoke the doctrine, the Court construes the FAC as seeking to pierce the corporate veil separating the various Sears entities it identifies. Under basic principles of corporate law,[3] corporations are entities of limited liability, and one corporation is legally distinct from another corporation, even if the two are affiliated. *Van Dorn Co. v. Future Chem. & Oil Corp.*, 753 F.2d 565, 569 (7th Cir. 1985) (citing *Main Bank of Chi. v. Baker*, 427 N.E.2d 94, 101 (Ill. 1981)). Thus, a cause of action against one corporation will not give rise to liability against another corporation unless a court pierces the veil of the first to reach the second, or treats the first as an "alter ego" of the second. *Id.* at 569–70.

To impose liability under the alter ego doctrine, a party must first demonstrate that one corporation "'is so controlled and its affairs so conducted that it is a mere instrumentality of another.'" *Id.* at 570 (quoting *Main Bank of Chi.*, 427

---

[3]     Because the parties do not raise a choice of law issue with regard to this subject, the Court relies in this section on Illinois law. *Camp v. TNT Logistics Corp.*, 553 F.3d 502, 505 (7th Cir. 2009). The Court has no reason to think the analysis would differ under the law of Texas. *See, e.g.*, *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006); *see also Jean v. Dugan*, 20 F.3d 255, 260 (7th Cir. 1994) ("Where there is no disagreement among the contact states, the law of the forum state applies.").

N.E.2d at 101). A party must further demonstrate that "'observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice.'" *Id.* (quoting *Main Bank of Chi.*, 427 N.E.2d at 101). These requirements apply to causes of action in both contract and tort, although more stringently to claims of breach of contract. *Northbound Grp., Inc. v. Norvax, Inc.*, 795 F.3d 647, 652–53 (7th Cir. 2015) (citing *Tower Investors, LLC v. 111 East Chestnut Consultants, Inc.*, 371 864 N.E.2d 927, 941 (Ill. App. Ct. 2007)).

Based on these principles, insofar as Counter-Plaintiffs seek to hold Sears Roebuck (and for that matter, Sears Holding) liable for SHAS's actions, they must allege facts giving rise to a reasonable inference both that SHAS is a mere instrumentality controlled by Sears Roebuck and that recognizing SHAS's separate existence from Sears Roebuck would sanction a fraud or promote injustice. Counter-Plaintiffs' allegations are sufficient to satisfy the first element, even though they rest "on information and belief." Such pleading is permissible, particularly in light of the reality that any details about Sears Roebuck's oversight of the various Sears entities are unavailable to Counter-Plaintiffs at this stage. *See Huon v. Denton*, 841 F.3d 733, 743 (7th Cir. 2016) (quoting *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005)).

But Counter-Plaintiffs' allegations fail to allege any fraud or injustice that would be occasioned by respecting the Sears corporations' separate existences. Rather, Counter-Plaintiffs' stated intention in pursing claims against Sears Roebuck is to recover damages from funds or assets owned by Sears Roebuck,

claiming that any judgment solely against SHAS would be "useless" simply because Sears Roebuck "own[s] and/or control[s]" SHAS. FAC ¶ 7. Mere allegations of a desire to recover from another corporation's assets, without more, are insufficient to demonstrate fraud or injustice. *Sea-Land Servs., Inc. v. Pepper Source*, 941 F.2d 519, 524 (7th Cir. 1991) (concluding that allegations of injustice must consist of "some 'wrong' beyond a [party's] inability to collect" on a judgment); *Julin v. Advanced Equities, Inc.*, No. 13 C 9075, 2014 WL 5617001, at *4 (N.D. Ill. Nov. 4, 2014) (granting motion to dismiss alter ego–based claim where "[plaintiff's] basis for naming [Corporation B], and fighting to keep [Corporation B] in the lawsuit, is her concern that [Corporation A] will not be able to pay her claim").

Counter-Plaintiffs maintain that they have alleged in the FAC that Sears Roebuck and Sears Holding participated in the wrongs described under Counts I, II, III, and IV, because all of the Sears entities "worked together" and Counter-Plaintiffs "should be afforded discovery to determine the relationships and connections among the Sears entities." Resp. at 7–8. But this argument fails to address Counter-Plaintiffs' failure to plead that fraud or injustice would result if corporate formalities were maintained. For this reason, Counter-Plaintiffs' claims

in Counts I, II, III, and IV as against Sears Roebuck and Sears Holding[4] are dismissed without prejudice.[5]

## II.     Counts I, VI, and VII as Against Wilks

Next, the Sears Counter-Defendants move to dismiss Counts I, VI, and VII as against Wilks. Regarding Count I, they argue—much as they do in regard to Sears Roebuck and Sears Holding—that Wilks was not a party to Counter-Plaintiffs' franchise agreements with SHAS and therefore cannot be liable for breach of contract. Mot. Dismiss at 4. Indeed, Counter-Plaintiffs have not alleged they have a contract with Wilks, and thus Wilks cannot be liable to them for breach of contract. *Northbound Grp.*, 795 F.3d at 650. Counter-Plaintiffs point to various allegations of wrongdoing by Wilks, Resp. at 8, but these allegations cannot substitute for a contract with Wilks that they allege she breached. Accordingly, Counter-Plaintiffs' claims in Count I as against Wilks are dismissed. Given Counter-Plaintiffs' allegations of the timing and nature of Wilks's involvement,

---

[4]     Counter-Plaintiffs note that, in a footnote to the FAC, they claim that Sears Holding sent letters wrongfully terminating their contract. *See* FAC ¶ 41 n.1. But as discussed above, their contract was not with Sears Holding; therefore, they cannot sue Sears Holding for breach. *Northbound Grp.*, 795 F.3d at 650.

[5]     The Sears Counter-Defendants ask that nearly all of Counter-Plaintiffs' claims be dismissed with prejudice, asserting that Counter-Plaintiffs have "already been informed of the deficiencies in their claims." Reply at 9. This assertion is evidently premised on the Court's giving Counter-Plaintiffs' leave to amend their original counterclaims. Order of March 7, 2016, ECF No. 43. In granting leave, however, the Court did not inform Counter-Plaintiffs of the deficiencies in their claims as the Sears Counter-Defendants assert. This is the Court's first opinion addressing Counter-Plaintiffs allegations, and except where otherwise indicated, the Court believes that granting leave to amend is generally appropriate at this stage.

amendment would likely be futile. Accordingly, the dismissal is with prejudice. *Tribble v. Evangelides*, 670 F.3d 753, 761 (7th Cir. 2012).

As for Counts VI and VII, the Sears Counter-Defendants argue that Counter-Plaintiffs' claims are based on statements made to them during the sale of their franchises, and because Wilks was not involved in the sale, she cannot be liable. Mot. Dismiss at 5. Once again, Counter-Plaintiffs have not alleged that Wilks made any representations to them at the time of sale. For this reason, she cannot be liable to Counter-Plaintiffs based on their allegations in Count VI under the Texas Business Opportunity Act and Texas Deceptive Trade Practices Act, both of which involve representations made by sellers and actions taken at the time of sale. *See* Tex. Bus. & Com. Code Ann. § 51.160 (West) (requiring disclosures by "seller mak[ing] a statement concerning sales or earnings"); *id.* § 51.301(1) (prohibiting "seller" from "employ[ing] a representation, device, scheme, or artifice to deceive a purchaser"); *id.* § 51.301(3) (prohibiting "seller" from making certain representations about income and earning potential from a business opportunity); *Rosen v. Nat'l Hot Rod Ass'n*, No. 14-94-00775-CV, 1995 WL 755712, at *4 (Tex. App. Dec. 21, 1995) (explaining that a sale is a prerequisite to an action for breach of warranty under Tex. Bus. & Com. Code Ann. § 17.50(a)(2)); *see also Parkway Co. v. Woodruff*, 901 S.W.2d 434, 441 (Tex. 1995) (holding that unconscionability in the context of Tex. Bus. & Com. Code Ann. § 17.50(a)(3) "requires that the seller take advantage of special skills and training *at the time of the sale*").

Similarly, Wilks cannot be liable to Counter-Plaintiffs based on their allegations of fraud in Count VII. *See, e.g.*, *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 881 (7th Cir. 2005) (listing an intentional false statement as an element of common law fraud under Illinois law); *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (listing the same under Texas law). Counter-Plaintiffs' claims in Counts VI and VII as against Wilks are therefore dismissed. Because amending these allegations would also be futile, the dismissal is with prejudice. *Tribble*, 670 F.3d at 761.

## III. Remaining Allegations in Counts I, III, IV, V, VI, and VII

### A. Count I: Breach of Contract

The Sears Counter-Defendants have moved to dismiss Counter-Plaintiffs' breach of contract claim in Count I, arguing it is insufficiently pleaded under Rule 12(b)(6). They concede that the FAC gives them sufficient notice of a claim premised on wrongful termination of the franchise agreements and improper retention of Counter-Plaintiffs' funds and property. Reply at 7. But they nevertheless object to what they perceive as "a tangled web of alleged wrongful conduct" also underlying Counter-Plaintiffs' allegations of breach. *Id.* at 7–8. The Sears Counter-Defendants therefore argue that Counter-Plaintiffs must identify each specific contractual provision that they claim was breached. *Id.* at 8.

For their part, Counter-Plaintiffs defend the FAC as giving adequate notice of their grounds for breach. They point to three different paragraphs contained within Count I that outline the purported actions on which they base their claim. Resp. at

10 (citing FAC ¶¶ 41, 42, 44). For example, Counter-Plaintiffs identify the following actions as breaches of contract: imposing improper "competitive conditions [and] operating requirements," FAC ¶ 41; unlawfully barring Counter-Plaintiffs from and trespassing on their property, *id.* ¶ 42; and "destroy[ing] valuable and critical business records and evidence," *id.* *See* Resp. at 10. Additionally, Count I incorporates by reference various paragraphs that specifically outline various other purported grounds for breach. *See, e.g.*, FAC ¶ 19.

Based on Counter-Plaintiffs' allegations, the Court finds that the FAC gives the Sears Counter-Defendants adequate notice of the grounds for Counter-Plaintiffs' breach of contract claim and presents a plausible claim for relief. The FAC is by no means a paragon of clarity, and it may be that certain grounds identified by Counter-Plaintiffs are nonmeritorious or simply duplicative of other causes of action. But the Sears Counter-Defendants have presented no other legal arguments to dismiss Counter-Plaintiffs' allegations, and the Court's duty at this stage is merely to determine whether Counter-Plaintiffs allegations are plausible and give the Sears Counter-Defendants adequate notice of the claims against them. The Court does not believe that, in this case, it is necessary for Counter-Plaintiffs to identify specific contractual provisions they allege are breached in order to survive Rule 12(b)(6). *See Peerless Network, Inc. v. MCI Commc'n Servs., Inc.*, No. 14 C 7417, 2015 WL 2455128, at *5–7 (N.D. Ill. May 21, 2015) (citing a majority of district courts refusing such a requirement, and finding that where parties had dealt with each other pursuant to a contract for an extended period of time, the

alleged breaching party was on fair notice of how it had breached).  Accordingly, the Sears Counter-Defendants' motion to dismiss Count I is denied.

### B.    Count III: Tortious Interference

In Count III, Counter-Plaintiffs raise three different claims: tortious interference with contract, tortious interference with existing business relations, and tortious interference with prospective business relations.  The parties agree that Counter-Plaintiffs' tortious interference with contract claim is properly limited to the allegation that the Sears Counter-Defendants interfered with their leases. Resp. at 11–12; Reply at 8.  In regard to Counter-Plaintiffs' allegations of tortious interference with existing and prospective business relations, however, the parties disagree about whether Counter-Plaintiffs state a claim under Rule 12(b)(6).

Counter-Plaintiffs' claim of tortious interference with existing business relations is premised on the Sears Counter-Defendants' "locking Counter-Plaintiffs illegally out of their leased premises," "usurping Counter-Plaintiffs' position as employer," and disparaging Counter-Plaintiffs' business reputation, all of which allegedly interfered with Counter-Plaintiffs' business relationships with their employees, customers, and suppliers.  FAC ¶¶ 58–60; *see* Reply at 12.  To state a claim for tortious interference with existing business relations, Counter-Plaintiffs must allege: (1) unlawful actions undertaken without justification or excuse; (2) with intent to harm; and (3) actual damages.  *Apani Sw., Inc. v. Coca-Cola Enters., Inc.*, 300 F.3d 620, 633–34 (5th Cir. 2002) (citing *Morris v. Jordan Fin. Corp.*, 564

S.W.2d 180, 184 (Tex. App. 1978)).[6]  An "unlawful action" for the purposes of a tortious interference claim requires "independently tortious or wrongful" conduct. *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001); *see also McGowan & Co. v. Bogan*, 93 F. Supp. 3d 624, 655 (S.D. Tex. 2015).

The Sears Counter-Defendants argue that Counter-Plaintiffs have failed to plead independently tortious conduct on which they can base their tortious interference claim.  Reply at 8–9.  But this argument simply ignores Counter-Plaintiffs' allegation that by locking them out of their store, the Sears Counter-Defendants converted and trespassed on their property, thereby interfering with their existing business relationships with employees and suppliers.  FAC ¶¶ 59–60. The Sears Counter-Defendants appear to acknowledge this point in their initial motion, but they state that "Counter-Plaintiffs' claims of conversion and trespass . . . are intrinsically tied to the wrongful termination claim.  If Counter-Plaintiffs' wrongful termination claim fails, [their] trespass and conversion claims also necessarily fail."  Mot. Dismiss at 8 n.10.  The Court is left to its own imagination in determining what this "intrinsic[] tie[]" is, and in any case, Counter-Plaintiffs' breach of contract claim does not fail at this stage.  Accordingly, Counter-Plaintiffs have adequately alleged independently tortious conduct underlying their

---

[6]     The Sears Counter-Defendants assert that Texas law should apply to Counter-Plaintiffs' tort claims because the wrongs they allege purportedly occurred in Texas.  Mot Dismiss 6 n.7.  Counter-Plaintiffs do not dispute this choice of law, thereby waving any argument otherwise. *Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009).  In any event, it is likely that Illinois choice of law rules would dictate a similar result under its presumptive rule that the law of the state where a tort injury occurred has the most significant relationship to the claim(s) at issue. *Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 865 (7th Cir. 2010).

claim of tortious interference with existing business relations. The Sears Counter-Defendants' motion to dismiss Counter-Plaintiffs' claim of tortious interference with existing business relations is therefore denied.

Counter-Plaintiffs' claim of tortious interference with *prospective* business relations, however, is another matter. A claim of tortious interference with prospective business relations requires: (1) a reasonable probability that Counter-Plaintiffs would have entered into a business relationship with another party; (2) a willful and intentional act of interference by the Sears Counter-Defendants, or malicious and intentional prevention of the relationship from occurring with the purpose of harming Counter-Plaintiffs; (3) the act of intervention proximately caused the Counter-Plaintiffs' damage; (4) the Sears Counter-Defendants' actions were not justified or privileged; and (5) Counter-Plaintiffs' suffered actual damage as a result of the interference. *Lee & Lee Int'l, Inc. v. Lee*, 261 F. Supp. 2d 665, 679 (N.D. Tex. 2003) (citing *Exxon Corp. v. Allsup*, 808 S.W.2d 648, 659 (Tex. App. 1991)). To establish the first element, Counter-Plaintiffs must allege facts showing specific relationships that would have been reasonably probable but for the Sears Counter-Defendants' interference. *Culbertson v. Lykos*, 790 F.3d 608, 631 (5th Cir. 2015).

Counter-Plaintiffs have plausibly identified existing business relationships—*i.e.*, those with existing employees and suppliers—with which they allege the Sears Counter-Defendants tortiously interfered. They have not, however, alleged facts that plausibly demonstrate specific, prospective business relationships that were

reasonably probable to have formed but for the Sears Counter-Defendants' actions. Counter-Plaintiffs do not identify any specific *future* employees, suppliers, or customers on which they base their claim. Accordingly, Counter-Plaintiffs' claim of tortious interference with prospective business relations is dismissed without prejudice.

## C.    Count IV: Unfair Competition

In Count IV, Counter-Plaintiffs allege in part that the Sears Counter-Defendants engaged in unfair competition by defaming them and disparaging their business reputation. Under Texas law, the tort of unfair competition has an amorphous existence. It is generally recognized as a derivative tort that encompasses "all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters." *Taylor Pub. Co. v. Jostens, Inc.*, 216 F.3d 465, 486 (5th Cir. 2000) (quoting *Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 14 (5th Cir. 1974)). To pursue a claim of unfair competition, therefore, Counter-Plaintiffs must plead some underlying cause of action giving rise to their allegations of unfair competition.

The Sears Counter-Defendants argue that "unfair competition is not itself an independent tort." Reply at 10. But this argument misses the mark. While unfair competition is not itself an independent tort, it is nevertheless a recognized claim under Texas law based on other, independent torts. The authorities cited by the Sears Counter-Defendants, *see id.*, do not dictate otherwise. And Counter-Plaintiffs have sufficiently pleaded their unfair competition claim by supporting it with

independent allegations of defamation and business disparagement.[7]  Accordingly, the Sears Counter-Defendants' motion to dismiss Count IV is denied.

### D.  Count V: Breach of Fiduciary Duty, Economic Duress, and Oppressive Conduct

In Count V, Counter-Plaintiffs advance claims of breach of fiduciary duty, economic duress, and oppressive conduct.[8]  Counter-Defendants have moved to dismiss all three of these claims.  The Court will address each in turn.

#### 1.  Breach of Fiduciary Duty

Beginning with their claim of breach of fiduciary duty, Counter-Plaintiffs allege that the Sears Counter-Defendants, by exercising "total control over every aspect of Counter-Plaintiffs' business," assumed a "special relationship of trust and confidence with Counter-Plaintiffs," thereby giving rise to a fiduciary duty that they breached.  FAC ¶ 73.  The parties agree, however, that as a general matter, franchisors do not owe franchisees a fiduciary duty.  *Original Great Am. Chocolate Chip Cookie Co. v. River Valley Cookies, Ltd.*, 970 F.2d 273, 280 (7th Cir. 1992); *see*

---

[7]   While one court applying Texas law has held that an unfair competition claim cannot spring from defamation and business disparagement, *Wickfire, LLC v. Trimax Media, Inc.*, No. A-14-CA-34-SS, 2016 WL 4119917, at *8 (W.D. Tex. Mar. 25, 2016), other courts acknowledge the viability of unfair competition claims based on these torts. *Vendever LLC v. Intermatic Mfg. Ltd.*, No. 3:11-CV-201-B, 2011 WL 4346324, at *6 (N.D. Tex. Sept. 16, 2011); *see also Eagle Metal Prod., LLC v. Keymark Enters., LLC*, 651 F. Supp. 2d 577, 589 (N.D. Tex. 2009).  Based on these authorities, and given that the Sears Counter-Defendants did not contest this issue, the Court will permit Counter-Plaintiffs' claim to proceed at this juncture.

[8]   Counter-Plaintiffs also allege "business coercion" and "constructive trust."  Their allegations of business coercion, however, are indistinguishable from their allegations of economic duress, and the parties do not treat the allegations separately.  Thus, the Court will follow the parties' direction and focus solely on economic duress.  Regarding their allegation of constructive trust, Counter-Plaintiffs concede that this is purely a remedy they seek in the event their other causes of action are successful.  Resp. at 17.

*also Brock v. Baskin Robbins, USA, Co.*, No. 5:99-CV-274, 2003 WL 21309428, at *3 (E.D. Tex. Jan. 17, 2003) (citing *Crim Truck & Tractor v. Navistar Intern.*, 823 S.W.2d 591, 594 (Tex. 1992)).[9]  A fiduciary duty can arise, however, where the relationship between franchisor and franchisee is "one of particular trust and confidence." *Putzier v. Ace Hardware Corp.*, 50 F. Supp. 3d 964, 979 (N.D. Ill. 2014); *see also Crim Truck*, 823 S.W.2d at 594.  Counter-Plaintiffs argue that, by stating specific facts demonstrating the Sears Counter-Defendants' domination and control, they have alleged a special relationship of trust and confidence giving rise to a fiduciary duty.  Resp. at 15.

The Court finds, however, that Counter-Plaintiffs' allegations are by themselves insufficient to state a claim for breach of fiduciary duty.  Without alleging how the Sears Counter-Defendants' control over their franchises differed from that of a typical franchisor-franchisee relationship—in which control by the franchisor is an expected aspect of the commercial relationship—Counter-Plaintiffs fail to plausibly allege that their franchisor-franchisee relationship entailed special trust and confidence.  Counter-Plaintiffs certainly offer a laundry list of actions that the Sears Counter-Defendants purportedly took in the course of their franchise relationship, ranging from requiring certain uniforms and décor to fixing store

---

[9]      Here, the Sears Counter-Defendants suggest that Illinois law should apply, Reply at 11, whereas Counter-Plaintiffs primarily rely on Texas law, Resp. at 15.  The Court cannot ascertain any meaningful difference between the jurisdictions' treatment of fiduciary duties in franchise relationships, nor do the parties highlight any differences.  Thus, the Court applies Illinois law.  *Jean*, 20 F.3d at 260.  But because both parties briefed the issue relying in part on Texas law, the Court incorporates some of their Texas authorities to bolster its analysis.

hours and prices, and they characterize these actions as demonstrating "total domination and control." FAC ¶ 73. But Counter-Plaintiffs do not allege how these measures differ from those in other standard franchisor-franchisee relationships. Without more, Counter-Plaintiffs' list does not give rise to a fiduciary duty. *Sparano v. Southland Corp.*, No. 94 C 2098, 1995 WL 470267, at *4 (N.D. Ill. Aug. 4, 1995) (declining to recognize a fiduciary duty on the part of a franchisor in relation to Illinois and Texas franchises because "the very nature of franchise relationships" is such that "the franchisor has a strong interest in maintaining standards, consistency, and a high success rate through the system"); *see also Melanson v. Navistar, Inc.*, No. 3:13-CV-2018-D, 2014 WL 4375715, at *11 n.12 (N.D. Tex. Sept. 4, 2014) (observing that, under Texas law, the degree of control exercised by one party over another is only relevant where one party is of disproportionate bargaining power and control, and not in ordinary, arms-length, commercial relationships); *Crim Truck*, 823 S.W.2d at 595 (noting that under Texas law, in the context of an arms-length dealing, an allegation of subjective trust, without more, does not give rise to a fiduciary relationship).

The Sears Counter-Defendants' conduct may be actionable under breach of contract or some other theory, but as presently alleged, Counter-Plaintiffs have failed to displace the general rule that a franchisor does not owe a franchisee a fiduciary duty. Accordingly, Counter-Plaintiffs' claim of breach of fiduciary duty in Count V is dismissed without prejudice.

## 2. Economic Duress

In Count V, Counter-Plaintiffs further allege that the Sears Counter-Defendants subjected them to economic duress. Under Texas law, economic duress is a cause of action arising in tort that requires: (1) a threat of unlawful activity (2) accompanied by an "illegal exaction or fraud or deception," such that (3) the threatened party is imminently restrained and its free agency is destroyed without a present means of protecting itself. *Schlotzsky's, Ltd. v. Sterling Purchasing & Nat'l Distrib. Co.*, 520 F.3d 393, 404 (5th Cir. 2008).

The Sears Counter-Defendants argue that Counter-Plaintiffs have alleged no facts supporting a claim for economic duress. Construing the FAC in a light most favorable to Counter-Plaintiffs, however, Counter-Plaintiffs' theory of economic duress is readily apparent. They allege that the Sears Counter-Defendants imposed improper requirements on them as franchisees as a means of manufacturing unlawful grounds on which to threaten to terminate their franchises. FAC ¶¶ 73–74. By threatening Counter-Plaintiffs with termination, they forced them to turn over the keys to their stores. *Id.* ¶¶ 25, 76. And because of the Sears Counter-Defendants' control over their franchises, Counter-Plaintiffs allege they had no way of protecting themselves. *Id.* ¶¶ 73–74. Whether true or not, these allegations state a claim for economic duress. The Sears Counter-Defendants' motion to dismiss Count V as to Counter-Plaintiffs' claim of economic duress is denied.

### 3. Oppressive Conduct

Finally, Counter-Plaintiffs list "oppressive conduct" as a cause of action under Count V. Texas law proscribes "oppressive" actions in the context of a number of different statutes, but none involves the factual circumstances presented in this case. *See Ritchie v. Rupe*, 443 S.W.3d 856, 866 n.10 (Tex. 2014). The case Counter-Plaintiffs cite in support of their claim notes that "oppressive" actions are proscribed by Texas statute in the context of certain auto dealer franchises, *id.* (citing Tex. Occ. Code Ann. § 2301.455 (West)), but that statute does not apply in this case. Counter-Plaintiffs have not identified, nor has the Court found, any case establishing a common law cause of action for oppressive conduct under Texas law. Accordingly, Counter-Plaintiffs' claim of oppressive conduct in Count V is dismissed with prejudice.

### E. Counts VI and VII: Texas Business Opportunity Act, Texas Deceptive Practices Act, and Fraud

In Counts VI and VII, Counter-Plaintiffs allege violations of the Texas Business Opportunity Act and Texas Deceptive Practices Act, as well as common law fraud. Their claims under the Texas Business Opportunity Act and Texas Deceptive Trade Practices Act are based on the Sears Counter-Defendants' purported misrepresentations about commissions and returns Counter-Plaintiffs would earn, their failure to pay Counter-Plaintiffs a promised marketing fee, and their failure to disclose to Counter-Plaintiffs the "overall competitive structure" surrounding their franchise and the control the Sears Counter-Defendants would exert. FAC ¶¶ 81–83 (citing Tex. Bus. & Com. Code Ann. §§ 51.160, 51.301(1),

51.301(3), 17.50(a)(2), 17.50(a)(3) (West)).  Similarly, under their fraud claim, Counter-Plaintiffs identify four different misrepresentations and omissions made by the Sears Counter-Defendants: (1) their promise to pay Counter-Plaintiffs a 2% marketing fee; (2) failure to disclose their intent to impose various pricing and competitive conditions; (3) statements about the minimum average commissions Counter-Plaintiffs should expect to receive; and (4) failure to disclose that Counter-Plaintiffs would face competition from other franchisees and Sears entities.  FAC ¶ 88; *see also* Resp. at 19–20.

The Sears Counter-Defendants move to dismiss Counter-Plaintiffs claims in Counts VI and VII on the basis that Counter-Plaintiffs failed to plead them with particularity under Rule 9(b).[10]  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Rule 9(b)'s heightened pleading requirement requires a level of precision that varies with the facts of each case often depending on what information is within the claimant's control.  *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011).  Generally speaking, however, Rule 9(b) requires pleading the "who, what, when, where, and how" of the purported fraud.  *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014).  These journalistic details must incorporate "'the identity of the person who made

---

[10]     Counter-Plaintiffs' claims alleging violations of the Texas Business Practices Act and Texas Deceptive Practices Act are premised largely on the same underlying facts as their fraud claim and are subject to Rule 9(b).  *Hidden Values, Inc. v. Wade*, No. 3:11-CV-1917-L, 2012 WL 1836087, at *4 (N.D. Tex. May 18, 2012); *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009).

the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs., Inc.*, 536 F.3d 663, 668 (7th Cir. 2008) (quoting *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997)).

The Sears Counter-Defendants assert that Counter-Plaintiffs' pleadings are deficient under Rule 9(b) in a number of respects. First, they argue that Counter-Plaintiffs fail to identify the Sears representatives who made (or the documents that contained) the fraudulent misrepresentations and omissions at issue. Reply at 14. They also argue that Counter-Plaintiffs have not alleged a sufficiently precise time when the misrepresentations and omissions were made. *Id.* Finally, they argue that some of Counter-Plaintiffs' allegations sound in promissory fraud, and Counter-Plaintiffs have failed to allege specific, objective indications of intent. *Id.* (citing *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992)).

The Court agrees that Counter-Plaintiffs' allegations underlying Counts VI and VII are deficiently pleaded in these respects. First, it is well within Counter-Plaintiffs' knowledge with whom they spoke in agreeing to purchase their franchises, and thus simply claiming that "Sears representatives" communicated certain misrepresentations is insufficient in this case. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 950 (7th Cir. 2013) (affirming dismissal of fraud-based pleading under Rule 9(b) because pleading "fail[ed] to identify who made the[]

representations on [an organization's] behalf"); *see also Pirelli Armstrong Tire Corp. v. Walgreen Co.*, No. 09C2046, 2009 WL 2777995, at *5 (N.D. Ill. Aug. 31, 2009).

Additionally, while Counter-Plaintiffs link some misrepresentations to Sears's "offering circulars," FAC ¶ 14, and Sears's "Franchise Disclosure Document," *id.* ¶¶ 11, 81, Resp. at 20, Counter-Plaintiffs' purported course of dealing with the Sears Counter-Defendants spanned multiple years and involved multiple documents, FAC ¶ 16. Counter-Plaintiffs have not alleged with precision which specific documents they relied upon or who distributed them. *JF Enters., LLC v. Fifth Third Bank*, 824 F. Supp. 2d 818, 824 (N.D. Ill. 2011); *see Ruderman v. Freed*, No. 14 C 9079, 2015 WL 5307583, at *4 (N.D. Ill. Sept. 10, 2015).

To that end, while Counter-Plaintiffs allege they elected to purchase their initial franchises in February 2010, FAC ¶ 11, they seek to rely on misrepresentations and omissions "at the time prior to and leading up to the date of executing the franchise agreement," Resp. at 20. Additionally, to the extent Counter-Plaintiffs seek to rely on statements made leading up to the purchase of their second franchises, *id.* ¶ 16, the time frame for their allegations is even more indeterminate. Courts have regularly found that pleading an open-ended time frame spanning multiple months and years fails to satisfy Rule 9(b). *Zaptron (HK) Ltd. v. Air Sea Transp., Inc.*, 221 F.R.D. 482, 484 (N.D. Ill. 2004) (collecting cases). The circumstances of this case are such that Counter-Plaintiffs should be able to plead certain misrepresentations down to the month (or even the day) they occurred.

Finally, many of Counter-Plaintiffs' fraud allegations appear to sound in promissory fraud. Under Texas law,[11] "'[a] promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act.'" *Shandong Yinguang Chem. Indus. Joint Stock Co. v. Potter*, 607 F.3d 1029, 1033 (5th Cir. 2010) (quoting *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986)). Thus, for example, the Sears Counter-Defendants' purported promise to pay Counter-Plaintiffs a marketing fee in the future does not state a traditional claim for common law fraud, as Counter-Plaintiffs suggest, Resp. at 19, but is instead an assertion of promissory fraud. Failure to adhere to a promise, however, is insufficient to constitute fraudulent intent on its own; rather, a party must adduce (and plead with particularity) "slight circumstantial evidence" of fraud. *Shandong*, 607 F.3d at 1034. Here, Counter-Plaintiffs have not alleged anything more than the Sears Counter-Defendants' failure to adhere to certain promises, which is not circumstantial evidence of fraudulent intent. Accordingly, they have failed to adequately plead promissory fraud under Rule 9(b).

---

[11]     Texas law would presumably apply to determine whether Counter-Plaintiffs can bring a promissory fraud claim, because they were allegedly injured in Texas and Texas has the most significant relationship to their claim. *Palmer v. Beverly Enters.*, 823 F.2d 1105, 1112 (7th Cir. 1987). The Sears Counter-Defendants, however, maintain that Illinois law should apply, Resp. at 14, and insofar as their franchise agreements select Illinois law and Counter-Plaintiffs fraud claims arise from the agreements, they may be right. *Foster v. PNC Bank, N.A.*, No. 12 C 3130, 2015 WL 8601656, at *4 (N.D. Ill. Dec. 14, 2015). Under Illinois law, promissory fraud is generally unactionable, and Counter-Plaintiffs have not alleged specific, objective manifestations of fraudulent intent. *Bower*, 978 F.2d at 1012.

For these reasons, Counter-Plaintiffs' claims under the Texas Business Opportunity Act and Texas Deceptive Practices Act in Count VI and for fraud in Count VII are dismissed without prejudice.

## Conclusion

For the reasons stated herein, the Court grants in part and denies in part the Sears Counter-Defendants' motion to dismiss [57]. Counter-Defendant Tucker is dismissed from all claims with prejudice and is hereby terminated as a party to this case. Counts I, II, III, and IV are dismissed as against Sears Roebuck and Sears Holding without prejudice. Counts I, VI, and VII are dismissed as against Wilks with prejudice. Counter-Plaintiffs' claim of tortious interference with prospective business relations in Count III, breach of fiduciary duty claim in Count V, and claims in Counts VI and VII are dismissed without prejudice. Counter-Plaintiffs' oppressive conduct claim in Count V is dismissed with prejudice. In all other respects, the Sears Counter-Defendants' motion to dismiss is denied.

Should Counter-Plaintiffs wish to amend their counterclaims, they must do so by March 20, 2017. The Sears Counter-Defendants' responsive pleading is due by fourteen days thereafter.

**IT IS SO ORDERED.**          **ENTERED**   3/3/17

_____
**John Z. Lee**
**United States District Judge**